Print

# CASE INFORMATION

## CV-17-890186 NICOLE WADE, ET AL. vs. LIBERTY MUTUAL INSURANCE GROUP, INC.

### Docket Information

| Filing Date | Side | Type | Description | Image |
|---|---|---|---|---|
| 01/07/2018 | N/A | SR | SCHEDULE ATTORNEY NOTICE. NOTICE GENERATED FOR WADE/IAN/ 01/07/2018 17:04:31 | |
| 01/07/2018 | N/A | SR | SCHEDULE ATTORNEY NOTICE. NOTICE GENERATED FOR LIBERTY MUTUAL INSURANCE GROUP, INC. 01/07/2018 17:04:31 | |
| 01/07/2018 | N/A | SR | SCHEDULE ATTORNEY NOTICE. NOTICE GENERATED FOR FRANK/MARK/S 01/07/2018 17:04:31 | |
| 01/07/2018 | N/A | SC | CASE MGMNT CONFERENCE SET FOR 02/21/2018 AT 02:10 PM. COUNSEL FOR PLAINTIFF(S) SHALL INFORM ALL OPPOSING COUNSEL AND/OR PRO SE PARTIES, IN WRITING, OF THIS DATE AND TIME. COUNSEL FOR ALL PARTIES ARE REQUIRED TO BE PRESENT IN PERSON AND TO BE FAMILIAR WITH THE UNDERLYING FACTS OF THE CASE. PARTIES NOT REPRESENTED BY COUNSEL SHALL LIKEWISE BE PRESENT IN PERSON. FAILURE OF ANY KIND OF THE AFOREMENTIONED PERSONS TO APPEAR AT THIS PROPERLY SCHEDULED CASE MANAGEMENT CONFERENCE MAY RESULT IN SANCTIONS INCLUDING DISMISSAL OF THE CASE AND/OR JUDGMENT BEING RENDERED. DISCOVERY IS TO START IMMEDIATELY. PARTIES TO BE READY WITH DEMAND AND OFFER OF SETTLEMENT. CASE MANAGEMENT CONFERENCES ARE CONDUCTED IN PERSON; TELEPHONE ATTENDANCE IS NOT PERMITTED FOR ANY REASON. DO NOT CALL THE COURT REQUESTING TELEPHONE APPEARANCE. | |
| 12/14/2017 | N/A | SR | FEDEX RECEIPT NO. 33999924 DELIVERED BY FEDEX 12/11/2017 LIBERTY MUTUAL INSURANCE GROUP, INC. PROCESSED BY COC 12/14/2017. | |
| 12/08/2017 | N/A | SR | SUMMONS E-FILE COPY COST | |
| 12/08/2017 | D1 | CS | WRIT FEE | |
| 12/08/2017 | D1 | SR | SUMS COMPLAINT(33999924) SENT BY FEDERAL EXPRESS. TO: LIBERTY MUTUAL INSURANCE GROUP, INC. 30775 BAINBRIDGE ROAD SUITE 180 SOLON, OH 44139 | 🗎 |

EXHIBIT 1

12/08/2017 N/A  SF    JUDGE JOHN D SUTULA ASSIGNED (RANDOM)
12/08/2017 P1   SF    LEGAL RESEARCH
12/08/2017 P1   SF    LEGAL NEWS
12/08/2017 P1   SF    LEGAL AID
12/08/2017 P1   SF    COURT SPECIAL PROJECTS FUND
12/08/2017 P1   SF    COMPUTER FEE
12/08/2017 P1   SF    CLERK'S FEE
12/08/2017 P1   SF    DEPOSIT AMOUNT PAID MARK S FRANK
12/08/2017 N/A  SF    CASE FILED: COMPLAINT                    

Only the official court records available from the Cuyahoga County Clerk of Courts, available in person, should be relied upon as accurate and current.

For questions/comments please click here.

Copyright © 2018 PROWARE. All Rights Reserved. 1.1.172



**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
**1200 Ontario Street**
**Cleveland, Ohio 44113**

## Court of Common Pleas

**New Case Electronically Filed:**
**December 8, 2017 11:20**

By: MARK S. FRANK 0015606

Confirmation Nbr. 1245884

| | |
|---|---|
| NICOLE WADE, ET AL. | CV 17 890186 |
| vs. | |
| LIBERTY MUTUAL INSURANCE GROUP | **Judge:** JOHN D. SUTULA |

**Pages Filed:** 58

IN THE COURT OF COMMON PLEAS

CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| NICOLE WADE<br>6459 Kinsman Nickerson Road<br>Kinsman, Ohio  44428 | )<br>)<br>) | CASE NO. |
| | ) | JUDGE |
| and | )<br>) | |
| IAN WADE<br>6459 Kinsman Nickerson Road<br>Kinsman, Ohio  44428 | )<br>)<br>)<br>) | **C O M P L A I N T** |
| | ) | (Trial by Jury Demanded) |
| Plaintiffs | ) | |
| vs. | )<br>) | |
| LIBERTY MUTUAL INSURANCE<br>GROUP, INC.<br>30775 Bainbridge Road, Suite 180<br>Solon, Ohio  44139 | )<br>)<br>)<br>)<br>) | |
| Defendant | ) | |

**FIRST CAUSE OF ACTION**

*PRELIMINARY ALLEGATIONS*

Now come **NICOLE WADE and IAN WADE**, and for their Complaint

against defendant **LIBERTY MUTUAL INSURANCE GROUP, INC.** for underinsured

motorists coverage state as follows:

1.  On or about August 11, 2015, Jessica M. Schiller (hereinafter

"Schiller), negligently and in violation of the applicable ordinances and statutes, operated

a motor vehicle eastbound on South Walnut Street near the intersection of South Mercer

Avenue in Sharpsville Borough, Pennsylvania, and violently struck the rear of the motor vehicle being operated by Plaintiff, Nicole Wade who was stopped ahead of her at the same time and place.

2.  As a direct and proximate result of the negligent actions of Schiller, plaintiff Nicole Wade was thrown about and within the motor vehicle she occupied and was caused to suffer severe injuries to various parts of her body, including but not limited to her head, eyes, neck, chest, upper extremities, shoulders and back, some of which continue and are permanent.  Plaintiff Nicole Wade, has further suffered severe pain and mental anguish and continues to suffer said pain and anguish which is permanent.

3.  As a further direct and proximate result of the negligent actions of Schiller and the injuries sustained, plaintiff Nicole Wade has been required to receive medical care, surgery and treatment for said injuries and to incur expenses for said treatment, all to her damage and has further suffered damage to her credit reputation.

4.  At all times material hereto Plaintiff, Nicole Wade, was negligence free.

5.  As a further direct and proximate result of the negligence and acts of defendants and the injuries sustained, plaintiff Nicole Wade has been unable to attend her daily occupation, suffered loss of income and benefits and suffered damage to her work and credit reputation as well as the enjoyment of life.

6.  Plaintiff Ian Wade was at all times material hereto, the spouse of plaintiff Nicole Wade.

7.  As a further direct and proximate result of the negligent actions of Schiller, plaintiff Ian Wade has suffered the loss of his wife's comfort, care consortium,

services, support, enjoyment and advice and has further incurred responsibility for the

expense for the care and treatment of the injuries sustained by his spouse in the incident

which is the subject of this lawsuit.

## CLAIM FOR UNDERINSURED MOTORIST COVERAGE

8.  Prior to August 11, 2015 defendant Liberty Mutual Insurance Group,

Inc., which is licensed to do business in Ohio and does so in Cuyahoga County,

(Hereinafter "Liberty") had issued to plaintiffs Nicole Wade and Ian Wade its policy of

Automobile Insurance in its usual form and with endorsements from its Solon, Ohio

office, and same was in full force and effect on August 11, 2015, insuring the plaintiffs,

among other things, up to the policy's declared limits for each individual named insured,

passenger and qualified family member for each accident, Uninsured and Underinsured

Motor Vehicle Coverage.

9.  The policy bears number AO5-281-043148-40 5 2 and is attached

hereto as Exhibit "A" and is incorporated herein by reference and hereinafter referred to

as the "Liberty Policy".

10.  On August 11, 2015 Plaintiff Nicole Wade was involved in the motor

vehicle accident more fully described above with Jessica M. Schiller, who by definition

in the Liberty Policy, is an underinsured motorist inasmuch as plaintiffs have previously

made claim against Schiller for injuries and damages and Schiller has insufficient liability

insurance limits to cover plaintiffs' claims.

11.  Plaintiffs Nicole Wade's and Ian Wade's injuries and damages which

have been specified above, with resultant medical expenses and losses and pain and

3

suffering, would be the total responsibility of the aforesaid underinsured motorist due to their negligence.

12.  On May 25, 2017 Plaintiffs, through counsel, placed Liberty on notice (Exhibit "B" attached hereto) and again on June 15, 2101 (Exhibit "C" attached hereto) of their intention to seek coverage for Underinsured Motorist Benefits and Medical Payments under the Liberty Policy and indicated to Liberty that Schiller's insurance carrier had tendered their policy limits for this subject claim; and further requested that Liberty make its determination of coverage under the Liberty Policy for said benefits.

13.  In a letter dated August 1, 2007 Liberty granted consent to Plaintiffs to accept the policy limits of Schiller's motor vehicle liability policy, release Schiller; and therein Liberty further waived its subrogation rights against Schiller (Exhibit "D" attached hereto).

14.  Plaintiffs, are insured as defined and set forth in PART C – UNINSURED/UNDERINSURED MOTORIST COVERAGE-Ohio (Endorsement) under the Liberty Policy and other provisions thereof and demand that Liberty pay plaintiffs' damages for bodily injuries, pain and suffering and loss of services/consortium which they are legally entitled to collect from the driver of the underinsured motor vehicle up to the plaintiffs' policy's declared limits.

15.  Plaintiffs state that they have satisfied all conditions precedent to be entitled to payment under the Underinsured Motorist coverage of the Liberty Policy and are not excluded by any provisions of the Liberty Policy from doing so.

Electronically Filed 12/08/2017 11:20 / / CV 17 890186 / Confirmation Nbr. 1245884 / CLDLJ

16.  The Liberty Policy does not provide for a legally binding arbitration procedure for Underinsured Motorist claims such as the one being advanced by plaintiffs herein and plaintiffs' only remedy is to file suit under the Policy.

### SECOND CAUSE OF ACTION

Now come **NICOLE WADE and IAN WADE**, and for their Complaint against defendant **LIBERTY MUTUAL INSURANCE GROUP, INC.** for bad faith state as follows:

17.  Plaintiffs reallege and reaver each and every allegation and averment as are necessary contained in the First Cause Action hereinabove as if fully rewritten herein.

18.  Defendant Liberty has failed to respond to the many demands for coverage under the Liberty Policy although Plaintiffs' counsel has made many attempts to have Liberty respond (Exhibits "E 1-3" attached hereto).

19.  Defendant Liberty has failed to adequately investigate to timely determine whether its coverages and exclusions apply to the facts of this case.

20.  Defendant Liberty has no reasonable justification to deny underinsured motorist coverage since:

1.  Plaintiffs are insured under the policy as named insureds.

2.  There are no exclusions which apply to providing coverage.

21.  Defendant Liberty has no reasonable basis under which to delay the payment of underinsured motorist benefits due under the policy in light of clear coverage.

5

22.  Plaintiffs have suffered both mental stress and economic loss as a result of the tortious conduct of Liberty, including but not limited to emotional harm and loss of economic opportunities among other compensatory damages.

23.  Defendant Liberty willfully and with actual malice failed to pay underinsured motorist benefits due and owing under the policy despite repeated efforts by Plaintiff's counsel over the past months to show that coverage is clear (Exhibit "D" attached hereto), Liberty failed to promptly and sufficiently investigate the claim, and has delayed payment of the benefits under the claim.  Moreover, Plaintiffs have incurred attorney's fees to pursue this action.  Defendant is liable for punitive damages for consciously denying the rights of the Plaintiffs.

**WHEREFORE**, Plaintiffs **NICOLE WADE and IAN WADE** demand judgment against Defendant, **LIBERTY MUTUAL INSURANCE GROUP, INC.,** as follows:

1. One Hundred Thousand Dollars ($100,000.00) in underinsured motorist coverage benefits,

2. For declaration of coverage under the Liberty Policy for all coverages thereunder arising from the subject incident,

3. Five Hundred Thousand Dollars ($500,000.00) in compensatory damages,

4. One Million Dollars ($1,000,000.00) in punitive damages,

5. Attorneys Fees,

6. Interest,

7. Costs of this action, and

8. Such further relief as may be appropriate under the circumstances.

6

A trial by jury is hereby demanded by Plaintiffs.


/s/ Mark S. Frank

**MARK S. FRANK (#0015606)**
Attorney for Plaintiffs

MARK S. FRANK, ATTORNEY AT LAW, LLC
4469 Renaissance Parkway
Cleveland, Ohio  44128-5754
mark@marksfranklaw.com
(216) 682-0870
Fax (216) 763-2620

7


**Liberty Mutual**
INSURANCE

**Liberty Mutual Insurance**

350 E. 96th Street
Indianapolis, In 46240
Telephone: 317-581-6855

June 5, 2017

Mark S Frank Attorney at Law
4469 Renaissance Pkwy
Cleveland, OH 44128

| | |
|---|---|
| Insured Name: | Nicole Wade |
| | Ian Wade |
| Policy Number: | AO528104314840 |
| Claim ID: | 035586422 |
| Date of Loss: | 08/11/2015 |
| Policy Effective: | 08/03/2015 |

I hereby certify that the attached is a true and accurate copy of the documents requested for the policy listed above as maintained by the Liberty Mutual Insurance Group Inc. in the usual and customary course of its business.

*Celest Bustard*

Celest Bustard
Policy Copy Support

CB
Enclosures



**EXHIBIT**

A




# Policy Declarations
A summary of your auto insurance coverage

Thank you for renewing with us.
Your declarations are effective as of 08/03/2015.

## INSURANCE INFORMATION

| | |
|---|---|
| Named Insured: | Nicole Wade<br>Ian Wade |
| Policy Number: | AO5-281-043148-40 5  2 |
| Policy Period: | 08/03/2015 -08/03/2016  12:01 AM<br>standard time at the address of the<br>Named Insured as stated below. |
| Mailing Address: | PO Box 382<br>Kinsman OH 44428 -0382 |

## Vehicles Covered by Your Policy

| VEH | YEAR | MAKE | MODEL | VEHICLE ID NUMBER |
|---|---|---|---|---|
| 1 | 2002 | FORD | ESCAPE | 1FMYU04182 KB66604 |
| 2 | 2012 | FORD | FOCUS | 1FAHP3H21 CL363163 |
| 3 | 2001 | VOLVO | V40 | YV1VW29541 F547170 |
| 4 | 1993 | JEEP | CHEROKEE 4 | 1J4FN28S3PL625119 |

## Coverage Details

Your total annual policy premium for all covered vehicles is shown below. A premium is shown for each type of coverage you have purchased for each vehicle. Where no premium is shown, you have not purchased the indicated coverage for that vehicle.

## Coverage Information

| Total Annual Policy Premium : | $5,223.00 |
|---|---|
| Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable. | |

| COVERAGE | LIMITS | | PREMIUM PER VEHICLE | | | |
|---|---|---|---|---|---|---|
| | | | VEH 1 | VEH 2 | VEH 3 | VEH 4 |
| **A. Liability** | | | | | | |
| Bodily Injury | $ 100,000 | Each Person | $308 | $352 | $225 | $228 |
| | $ 300,000 | Each Accident | | | | |
| Property Damage | $ 100,000 | Each Accident | $282 | $237 | $172 | $209 |
| **B. Medical Payments** | | | | | | |
| | $ 5,000 | Each Person | $36 | $31 | $22 | $32 |
| **C. Uninsured/Underinsured Motorists** | | | | | | |
| Uninsured Motorists | $ 100,000 | Each Person | $71 | $62 | $43 | $51 |
| Bodily Injury | $ 300,000 | Each Accident | | | | |





## ACTION REQUIRED:

Please review and keep for your records.



## QUESTIONS ABOUT YOUR POLICY?
By Phone
1-330-487-5793
1-800-437-7995

Liberty Mutual Office
30775 Bainbridge Rd Ste 180
Solon OH 44139

Sales Representative
Brian C Gecina

Visit us online
LibertyMutual.com

## GO PAPERLESS
Manage your policy 24/7 on eService
LibertyMutual.com/register

To report a claim
By Phone
1-800-2CLAIMS
(1-800-225-2467)

Online
LibertyMutual.com/claims

AUTO 3079 04 11

Page 1 of 3





## Coverage Information (continued)

| COVERAGE | LIMITS | | PREMIUM PER VEHICLE | | |
|---|---|---|---|---|---|
| | | VEH 1 | VEH 2 | VEH 3 | VEH 4 |
| **D. Coverage for Damage to Your Auto** | | | | | |
| Collision | | $395 | $883 | $417 | $183 |
| Actual Cash Value Less Deductible Shown | | | | | |
| Veh 1 $500 | Veh 2 $500 | | | | |
| Veh 3 $500 | Veh 4 $500 | | | | |
| Other Than Collision | | $140 | $345 | $153 | $67 |
| Actual Cash Value Less Deductible Shown | | | | | |
| Veh 1 $100 | Veh 2 $100 | | | | |
| Veh 3 $100 | Veh 4 $100 | | | | |
| **OPTIONAL COVERAGE** | | | | | |
| Towing And Labor Cost Each Disablement | | $21 | $14 | $21 | $21 |
| Veh 1 $50 | Veh 2 $50 | | | | |
| Veh 3 $50 | Veh 4 $50 | | | | |
| Better Car Replacement™ | | | $202 | | |
| **Annual Premium Per Vehicle:** | | $1,253 | $2,126 | $1,053 | $791 |

Policy Number:
AO5-281-043148 -40 5 2
Declarations effective:
08/03/2015

---

| Total Annual Policy Premium : | $5,223.00 |
|---|---|

Your discounts and benefits have been applied. Includes state sales tax and local surcharge where applicable.

## Discounts and Benefits

Your discounts and benefits have been applied to your Total Annual Policy Premium.

### VEHICLE DISCOUNTS

| | VEH 1 | VEH 2 | VEH 3 | VEH 4 |
|---|---|---|---|---|
| Anti-Theft Device Discount | Yes | Yes | Yes | |
| Vehicle Safety Discount | Yes | Yes | Yes | Yes |

### POLICY DISCOUNTS

- Early Shopper Discount
- Electronic Funds Transfer Discount
- Multi-Car Discount
- Paperless Policy Discount
- Multi-Policy Discount

### POLICY BENEFITS

Accident Forgiveness: If you remain accident free and violation free, your policy may be eligible to earn Forgiveness in 5 Year(s).

## Additional Information for Vehicles Covered by Your Policy

| LOSS PAYEE(S) | MONTH/YEAR EXPIRES |
|---|---|
| VEH 2: FIRST MERIT BANK | 10/2019 |

Electronically Filed 12/08/2017 11:20 / CV-17-890766 / Confirmation Nbr. 1249884 / CLDLJ



## Driver Information

| DRIVER NAME | LICENSE NUMBER | STATE | DATE OF BIRTH |
|---|---|---|---|
| 1.  Nicole Wade | tt907423 | OH | 08/27/1974 |
| 2.  Ian Wade | SB898895 | OH | 03/05/1987 |

To ensure proper coverage, please contact us to add drivers not listed above.

Policy Number:
AO5-281-043148-40 5 2
Declarations effective:
08/03/2015

## Endorsements - Changes to Your Policy

Amendment of Policy Provisions - Ohio  AS3716  09  13
Automobile Amendatory Endorsement  AS3763  03  14
Uninsured Motorists Coverage - Ohio  AS3645  10  12
Amendment of Policy Definitions  AS2344  04  08
Better Car Replacement™Coverage  AS3696  12  10
Coverage For Damage To Your Auto Exclusion Endorsement  PP 13 01 12 99
Towing and Labor Coverage  AS2208  02  05
Nuclear, Bio-Chemical & Mold Exclusion Endorsement  AS2213  02  05
Liability Coverage Exclusion Endorsement  PP 03 26 04 13
Loss Payable Clause  PP 03 05 08 86

LibertyGuard Auto Policy Declaration provided and underwritten by
LM Insurance Corporation, Boston, MA.

This policy, including endorsements listed above,
is countersigned by:

_____
Authorized Representative

_____
President

_____
Secretary



# LibertyGuard Auto Policy

Please read your policy and each endorsement carefully.

**To serve you best...**

Liberty Mutual has over 350 service offices throughout the United States and Canada.  Please contact your service office shown on your Declarations Page to report losses, or for any changes or questions about your insurance. Payments should be sent to the office indicated on your bill.

**THIS POLICY IS NONASSESSABLE**                Liberty Mutual Insurance Group

AUTO 3615 Ed. 6-98



**LIBERTYGUARD AUTO POLICY**

**QUICK REFERENCE**



DECLARATIONS PAGE
Your Name and Address
Your Auto or Trailer
Policy Period

| Coverages and Amounts of Insurance | Beginning On Page |
|---|---|

Agreement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
Definitions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

**PART A - LIABILITY COVERAGE**
Insuring Agreement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
Supplementary Payments  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2
Exclusions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
Limit of Liability  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
Out of State Coverage  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
Financial Responsibility  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
Other Insurance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

**PART B - MEDICAL PAYMENTS COVERAGE**
Insuring Agreement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
Exclusions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
Limit of Liability  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
Other Insurance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

**PART C - UNINSURED MOTORISTS COVERAGE**
Insuring Agreement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
Exclusions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Limit of Liability  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Other Insurance  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
Arbitration  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

**PART D - COVERAGE FOR DAMAGE TO YOUR AUTO**
Insuring Agreement  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
Transportation Expenses  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
Exclusions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
Limit of Liability  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
Payment of Loss  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
No Benefit to Bailee  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
Other Sources of Recovery  . . . . . . . . . . . . . . . . . . . . . . . . . .  10
Appraisal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

**PART E - DUTIES AFTER AN ACCIDENT OR LOSS** . . . . . . . . . . . . . . 10
**PART F - GENERAL PROVISIONS**
Bankruptcy  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
Changes  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
Fraud  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
Legal Action Against Us  . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
Our Right To Recover Payment  . . . . . . . . . . . . . . . . . . . . . . .  11
Policy Period And Territory  . . . . . . . . . . . . . . . . . . . . . . . . . .  11
Termination  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . :.. . . . . . .  11
Transfer Of Your Interest In This Policy  . . . . . . . . . . . . . . . . . 12
Two Or More Auto Policies  . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**\*MUTUAL POLICY CONDITIONS**  . . . . . . . . . . . . . . . . . . . . . . 13

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the insurer.



## AUTO POLICY

### AGREEMENT

In return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

### DEFINITIONS

**A.** Throughout this policy, "you" and "your" refer to:

1. The "named insured" shown in the Declarations; and

2. The spouse if a resident of the same household.

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered "you" and "your" under this policy but only until the earlier of:

1. The end of 90 days following the spouse's change of residency;

2. The effective date of another policy listing the spouse as a named insured; or

3. The end of the policy period.

**B.** "We", "us" and "our" refer to the Company providing this insurance.

**C.** For purposes of this policy, a private passenger type auto, pickup or van shall be deemed to be owned by a person if leased:

1. Under a written agreement to that person; and

2. For a continuous period of at least 6 months.

Other words and phrases are defined. They are in quotation marks when used.

**D.** "Bodily injury" means bodily harm, sickness or disease, including death that results.

**E.** "Business" includes trade, profession or occupation.

**F.** "Family member" means a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child.

**G.** "Occupying" means in, upon, getting in, on, out or off.

**H.** "Property damage" means physical injury to, destruction of or loss of use of tangible property.

**I.** "Trailer" means a vehicle designed to be pulled by a:

1. Private passenger auto; or

2. Pickup or van.

It also means a farm wagon or farm implement while towed by a vehicle listed in

1. or 2. above.

**J.** "Your covered auto" means:

1. Any vehicle shown in the Declarations.

2. A "newly acquired auto".

3. Any "trailer" you own.

4. Any auto or "trailer" you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

    a. Breakdown;

    b. Repair;

    c. Servicing;

    d. Loss; or

    e. Destruction.

    This Provision (J.4.) does not apply to Coverage For Damage To Your Auto.

**K.** "Newly acquired auto":

1. "Newly acquired auto" means any of the following types of vehicles you become the owner of during the policy period:

    a. A private passenger auto; or

    b. A pickup or van, for which no other insurance policy provides coverage, that:

        (1) Has a Gross Vehicle Weight of less than 10,000 lbs.; and

        (2) Is not used for the delivery or transportation of goods and materials unless such use is:

            (a) Incidental to your "business" of installing, maintaining or repairing furnishings or equipment; or

            (b) For farming or ranching.

2. Coverage for a "newly acquired auto" is provided as described below. If you ask us to insure a "newly acquired auto" after a specified time period described below has elapsed, any coverage we provide for a "newly acquired auto" will begin at the time you request the coverage.

    a. For any coverage provided in this policy except Coverage For Damage To Your Auto, a "newly acquired auto" will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner.



However, for this coverage to apply to a "newly acquired auto" which is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 14 days after you become the owner.

If a "newly acquired auto" replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

   b.  Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

   (1)  14 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

   (2)  Four days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", a Collision deductible of $500 will apply.

   c.  Other Than Collision Coverage for a "newly acquired auto" begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:

   (1)  14 days after you become the owner if the Declarations indicate that Other Than Collision Coverage applies to at least one auto. In this case, the "newly acquired auto" will have the broadest coverage we now provide for any auto shown in the Declarations.

   (2)  Four days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 4 day requirement and a loss occurred before you asked us to insure the "newly acquired auto", an Other Than Collision deductible of $500 will apply.

## PART A - LIABILITY COVERAGE

### INSURING AGREEMENT

A.  We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident. Damages include prejudgment interest awarded against the "insured". We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for "bodily injury" or "property damage" not covered under this policy.

B.  "Insured" as used in this Part means:

   1.  You or any "family member" for the ownership, maintenance or use of any auto or "trailer".

   2.  Any person using "your covered auto".

   3.  For "your covered auto", any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

   4.  For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision (B.4.) applies only if the person or organization does not own or hire the auto or "trailer".

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an "insured":

   1.  Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in "bodily injury" or "property damage" covered under this policy.

   2.  Premiums on appeal bonds and bonds to release attachments in any suit we defend.

   3.  Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgement which does not exceed our limit of liability for this coverage.

   4.  Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.



5. Other reasonable expenses incurred at our request.

**EXCLUSIONS**

A. We do not provide Liability Coverage for any "insured":

1. Who intentionally causes "bodily injury" or "property damage".

2. For "property damage" to property owned or being transported by that "insured".

3. For "property damage" to property:
   a. Rented to;
   b. Used by; or
   c. In the care of;
   that "insured".
   This Exclusion (A.3.) does not apply to "property damage" to a residence or private garage.

4. For "bodily injury" to an employee of that "insured" during the course of employment. This Exclusion (A.4.) does not apply to "bodily injury" to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that "insured's" liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This Exclusion (A.5.) does not apply to a share-the-expense car pool.

6. While employed or otherwise engaged in the "business" of:
   a. Selling;
   b. Repairing;
   c. Servicing;
   d. Storing; or
   e. Parking;
   vehicles designed for use mainly on public highways. This includes road testing and delivery. This Exclusion (A.6.) does not apply to the ownership, maintenance or use of "your covered auto" by:
   a. You;
   b. Any "family member"; or
   c. Any partner, agent or employee of you or any "family member".

7. Maintaining or using any vehicle while that "insured" is employed or otherwise engaged in any "business" (other than farming or ranching) not described in Exclusion A.6.
   This Exclusion (A.7.) does not apply to the maintenance or use of a:
   a. Private passenger auto;

b. Pickup or van; or
c. "Trailer" used with a vehicle described in a. or b. above.

8. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (A.8.) does not apply to a "family member" using "your covered auto" which is owned by you.

9. For "bodily injury" or "property damage" for which that "insured":
   a. Is an insured under a nuclear energy liability policy; or
   b. Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.
   A nuclear energy liability policy is a policy issued by any of the following or their successors:
   a. Nuclear Energy Liability Insurance Association;
   b. Mutual Atomic Energy Liability Underwriters; or
   c. Nuclear Insurance Association of Canada.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. Any vehicle which:
   a. Has fewer than four wheels; or
   b. Is designed mainly for use off public roads.
   This Exclusion (B.1.) does not apply:
   a. While such vehicle is being used by an "insured" in a medical emergency;
   b. To any "trailer"; or
   c. To any non-owned golf cart.

2. Any vehicle, other than "your covered auto", which is:
   a. Owned by you; or
   b. Furnished or available for your regular use.

3. Any vehicle, other than "your covered auto", which is:
   a. Owned by any "family member"; or
   b. Furnished or available for the regular use of any "family member".
   However, this Exclusion (B.3.) does not apply to you while you are maintaining or "occupying" any vehicle which is:
   a. Owned by a "family member"; or
   b. Furnished or available for the regular use of a "family member".

4. Any vehicle, located inside a facility designed for racing, for the purpose of:
   a. Competing in; or



b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for "bodily injury" resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all "property damage" resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B or Part C of this policy; or
2. Any Underinsured Motorists Coverage provided by this policy.

**OUT OF STATE COVERAGE**

If an auto accident to which this policy applies occurs in any state or province other than the one in which "your covered auto" is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for "bodily injury" or "property damage" higher than the limit shown in the Declarations, your policy will provide the higher specified limit.
2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

**FINANCIAL RESPONSIBILITY**

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

**OTHER INSURANCE**

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

---

**PART B - MEDICAL PAYMENTS COVERAGE**

**INSURING AGREEMENT**

A. We will pay reasonable expenses incurred for necessary medical and funeral services because of "bodily injury":

1. Caused by accident; and
2. Sustained by an "insured".

We will pay only those expenses incurred for services rendered within **3** years from the date of the accident.

B. "Insured" as used in this Part means:

1. You or any "family member":
   a. While "occupying"; or
   b. As a pedestrian when struck by; a motor vehicle designed for use mainly on public roads or a trailer of any type.
2. Any other person while "occupying" "your covered auto".

**EXCLUSIONS**

We do not provide Medical Payments Coverage for any "insured" for "bodily injury":

1. Sustained while "occupying" any motorized vehicle having fewer than four wheels.
2. Sustained while "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (2.) does not apply to a share-the-expense car pool.
3. Sustained while "occupying" any vehicle located for use as a residence or premises.
4. Occurring during the course of employment if workers' compensation benefits are required or available for the "bodily injury".
5. Sustained while "occupying", or when struck by, any vehicle (other than "your covered auto") which is:
   a. Owned by you; or
   b. Furnished or available for your regular use.
6. Sustained while "occupying", or when



struck by, any vehicle (other than "your covered auto") which is:

a. Owned by any "family member"; or

b. Furnished or available for the regular use of any "family member".

However, this Exclusion (6.) does not apply to you.

7. Sustained while "occupying" a vehicle without a reasonable belief that that "insured" is entitled to do so, This Exclusion (7.) does not apply to a "family member" using "your covered auto" which is owned by you.

8. Sustained while "occupying" a vehicle when it is being used in the "business" of an "insured". This Exclusion (8.) does not apply to "bodily injury" sustained while "occupying" a:

a. Private passenger auto;

b. Pickup or van that you own; or

c. "Trailer" used with a vehicle described in a. or b. above.

9. Caused by or as a consequence of:

a. Discharge of a nuclear weapon (even if accidental);

b. War (declared or undeclared);

c. Civil war;

d. Insurrection; or

e. Rebellion or revolution.

10. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

a. Nuclear reaction;

b. Radiation; or

c. Radioactive contamination.

11. Sustained while "occupying" any vehicle located inside a facility designed for racing, for the purpose of:

a. Competing in; or

b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

### LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A or Part C of this policy; or

2. Any Underinsured Motorists Coverage provided by this policy.

### OTHER INSURANCE

If there is other applicable auto medical payments insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectible auto insurance providing payments for medical or funeral expenses.

## PART C - UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury":

1. Sustained by an "insured"; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle".

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:

1. You or any "family member".

2. Any other person "occupying" "your covered auto".

3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

C. "Uninsured motor vehicle" means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily injury liability must be less than the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged.



3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits:
   a. You or any "family member";
   b. A vehicle which you or any "family member" are "occupying"; or
   c. "Your covered auto".
4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
   a. Denies coverage; or
   b. Is or becomes insolvent.

However, "uninsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".
2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.
3. Owned by any governmental unit or agency.
4. Operated on rails or crawler treads.
5. Designed mainly for use off public roads while not on public roads.
6. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained:
   1. By an "insured" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.
   2. By any "family member" while "occupying", or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage for "bodily injury" sustained by any "insured":
   1. If that "insured" or the legal representative settles the "bodily injury" claim without our consent.
   2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (B.2.) does not apply to a share-the-expense car pool.
   3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (B.3.) does not apply to a "family member" using "your

covered auto" which is owned by you.
C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:
   1. Workers' compensation law; or
   2. Disability benefits law.
D. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury"' sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.
   This is the most we will pay regardless of the number of:
   1. "Insureds";
   2. Claims made;
   3. Vehicles or premiums shown in the Declarations; or
   4. Vehicles involved in the accident.
B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:
   1. Part A. or Part B. of this policy; or
   2. Any Underinsured Motorists Coverage provided by this policy.
C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.
D. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:
   1. Workers' compensation law; or
   2. Disability benefits law.

**OTHER INSURANCE**

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under



any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing such coverage on a primary basis.

3. If the coverage under this policy is provided:

   a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

**ARBITRATION**

A. If we and an "insured" do not agree:

   1. Whether that "insured" is legally entitled to recover damages; or

   2. As to the amount of damages which are recoverable by that "insured";

   from the owner or operator of an "uninsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

   1. Pay the expenses it incurs; and

   2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will he binding as to:

   1. Whether the "insured" is legally entitled to recover damages; and

   2. The amount of damages. This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which "your covered auto" is principally garaged. If the amount exceeds that limit, either party may demand the right to a trial. This demand must he made within 60 days of the arbitrator's decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

---

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

**INSURING AGREEMENT**

A. We will pay for direct and accidental loss to "your covered auto" or any "non-owned auto", including their equipment, minus any applicable deductible shown in the Declarations. If loss to more than one "your covered auto" or "non-owned auto" results from the same "collision", only the highest applicable deductible will apply. We will pay for loss to "your covered auto" caused by:

   1. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.

   2. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.

   If there is a loss to a "non-owned auto", we will provide the broadest coverage applicable to any "your covered auto" shown in the Declarations.

B. "Collision" means the upset of "your covered auto" or a "non-owned auto" or their impact with another vehicle or object.

Loss caused by the following is considered other than "collision":

   1. Missiles or falling objects;

   2. Fire;

   3. Theft or larceny;

   4. Explosion or earthquake;

   5. Windstorm;

   6. Hail, water or flood;

   7. Malicious mischief or vandalism;

   8. Riot or civil commotion;

   9. Contact with bird or animal; or

   10. Breakage of glass.

   If breakage of glass is caused by a "collision", you may elect to have it considered a loss caused by "collision".

C. "Non-owned auto" means:

   1. Any private passenger auto, pickup, van or "trailer" not owned by or furnished or available for the regular use of you or any "family member" while in the custody of or being operated by you or any "family member"; or



2. Any auto or "trailer" you do not own while used as a temporary substitute for "your covered auto" which is out of normal use because of its:
   a. Breakdown;
   b. Repair;
   c. Servicing;
   d. Loss; or
   e. Destruction.

**TRANSPORTATION EXPENSES**

A. In addition, we will pay, without application of a deductible, up to a maximum of $600 for:
   1. Temporary transportation expenses not exceeding $20 per day incurred by you in the event of a loss to "your covered auto". We will pay for such expenses if the loss is caused by:
      a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
      b. "Collision" only if the Declarations indicate that Collision Coverage is provided for that auto.
   2. Expenses for which you become legally responsible in the event of loss to a "non-owned auto". We will pay for such expenses if the loss is caused by:
      a. Other than "collision" only if the Declarations indicate that Other Than Collision Coverage is provided for any "your covered auto".
      b. "Collision" only if the Declarations indicate that Collision Coverage is provided for any "your covered auto".
   However, the most we will pay for any expenses for loss of use is $20 per day.

B. The loss is caused by:
   1. A total theft of "your covered auto" or a "non-owned auto", we will pay only expenses incurred during the period:
      a. Beginning 48 hours after the theft; and
      b. Ending when "your covered auto" or the "non-owned auto" is returned to use or we pay for its loss.
   2. Other than theft of a "your covered auto" or a "non-owned auto", we will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours.

C. Our payment will be limited to that period of time reasonably required to repair or replace the "your covered auto" or the "non-owned auto".

**EXCLUSIONS**

We will not pay for:
1. Loss to "your covered auto" or any "non-owned auto" which occurs while it is being used as a public or livery conveyance. This Exclusion (1.) does not apply to a share-the-expense car pool.
2. Damage due and confined to:
   a. Wear and tear;
   b. Freezing;
   c. Mechanical or electrical breakdown or failure; or
   d. Road damage to tires.
   This Exclusion (2.) does not apply if the damage results from the total theft of "your covered auto" or any "non-owned auto".
3. Loss due to or as a consequence of:
   a. Radioactive contamination;
   b. Discharge of any nuclear weapon (even if accidental);
   c. War (declared or undeclared);
   d. Civil war;
   e. Insurrection; or
   f. Rebellion or revolution.
4. Loss to any electronic equipment designed for the reproduction of sound and any accessories used with such equipment. This includes but is not limited to:
   a. Radios and stereos;
   b. Tape decks; or
   c. Compact disc players.
   This Exclusion (4.) does not apply to equipment designed solely for the reproduction of sound and accessories used with such equipment, provided:
   a. The equipment is permanently installed in "your covered auto" or any "non-owned auto"; or
   b. The equipment is:
      (1) Removable from a housing unit which is permanently installed in the auto;
      (2) Designed to be solely operated by use of the power from the auto's electrical system; and
      (3) In or upon "your covered auto" or any "non-owned auto" at the time of loss.
5. Loss to any electronic equipment that receives or transmits audio, visual or data signals and any accessories used with such equipment. This includes but is not limited to:

Page 8 of 13



a. Citizens band radios;
b. Telephones;
c. Two-way mobile radios;
d. Scanning monitor receivers;
e. Television monitor receivers;
f. Video cassette recorders;
g. Audio cassette recorders; or
h. Personal computers.

This Exclusion (5.) does not apply to:

a. Any electronic equipment that is necessary for the normal operation of the auto or the monitoring of the auto's operating systems; or

b. A permanently installed telephone designed to be operated by use of the power from the auto's electrical system and any accessories used with the telephone.

6. Loss to tapes, records, discs or other media used with equipment described in Exclusions 4. and 5.

7. A total loss to "your covered auto" or any "non-owned auto" due to destruction or confiscation by governmental or civil authorities.

This Exclusion (7.) does not apply to the interests of Loss Payees in "your covered auto".

8. Loss to:

a. A "trailer", camper body, or motor home, which is not shown in the Declarations; or

b. Facilities or equipment used with such "trailer", camper body or motor home. Facilities or equipment include but are not limited to:

(1) Cooking, dining, plumbing or refrigeration facilities;

(2) Awnings or cabanas; or

(3) Any other facilities or equipment used with a "trailer", camper body, or motor home.

This Exclusion (8.) does not apply to a:

a. "Trailer", and its facilities or equipment, which you do not own; or

b. "Trailer", camper body, or the facilities or equipment in or attached to the "trailer" or camper body, which you:

(1) Acquire during the policy period; and

(2) Ask us to insure within 14 days after you become the owner.

9. Loss to any "non-owned auto" when used by you or any "family member" without a reasonable belief that you or that "family member" are entitled to do so.

10. Loss to equipment designed or used for the detection or location of radar or laser.

11. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

a. Special carpeting or insulation;

b. Furniture or bars;

c. Height-extending roofs; or

d. Custom murals, paintings or other decals or graphics.

This Exclusion (11.) does not apply to a cap, cover or bedliner in or upon any "your covered auto" which is a pickup.

12. Loss to any "non-owned auto" being maintained or used by any person while employed or otherwise engaged in the "business" of:

a. Selling;

b. Repairing;

c. Servicing;

d. Storing; or

e. Parking;

vehicles designed for use on public highways. This includes road testing and delivery.

13. Loss to "your covered auto" or any "non-owned auto", located inside a facility designed for racing, for the purpose of:

a. Competing in; or

b. Practicing or preparing for;

any prearranged or organized racing or speed contest.

14. Loss to, or loss of use of, a "non-owned auto" rented by:

a. You; or

b. Any "family member";

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that "family member", pursuant to the provisions of any applicable rental agreement or state law.

**LIMIT OF LIABILITY**

A. Our limit of liability for loss will be the lesser of the:

1. Actual cash value of the stolen or damaged property; or

2. Amount necessary to repair or replace the property with other property of like kind and quality.

However, the most we will pay for loss to:



1. Any "non-owned auto" which is a trailer is $500.
2. Equipment designed solely for the reproduction of sound, including any accessories used with such equipment, which is installed in locations not used by the auto manufacturer for installation of such equipment or accessories, is $1,000.

B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss.

C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**PAYMENT OF LOSS**

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or
2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a "non-owned auto" shall be excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the "non-owned auto";
2. Any other applicable physical damage insurance;
3. Any other source of recovery applicable to the loss.

**APPRAISAL**

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E - DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
3. Submit, as often as we reasonably require:
   a. To physical exams by physicians we select. We will pay for these exams.
   b. To examination under oath and subscribe the same.
4. Authorize us to obtain:

    a. Medical reports; and
    b. Other pertinent records.

5. Submit a proof of loss when required by us.

C. A person seeking Uninsured Motorists Coverage must also:

1. Promptly notify the police if a hit-and-run driver is involved.
2. Promptly send us copies of the legal papers if a suit is brought.

D. A person seeking Coverage For Damage To Your Auto must also:

1. Take reasonable steps after loss to protect "your covered auto" or any "non-owned auto" and their equipment from further loss. We will pay reasonable expenses incurred to do this.
2. Promptly notify the police if "your covered auto" or any "non-owned auto" is stolen.
3. Permit us to inspect and appraise the damaged property before its repair or disposal.



## PART F - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the "insured" shall not relieve us of any obligations under this policy.

### CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

   1. The number, type or use classification of insured vehicles;

   2. Operators using insured vehicles;

   3. The place of principal garaging of insured vehicles;

   4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This Paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

   1. A subsequent edition of your policy; or

   2. An Amendatory Endorsement.

### FRAUD

We do not provide coverage for any "insured" who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy.

### LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

   1. We agree in writing that the "insured" has an obligation to pay; or

   2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

### OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

   1. Whatever is necessary to enable us to exercise our rights; and

   2. Nothing after loss to prejudice them.

   However, our rights in this Paragraph (A.) do not apply under Part D, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

   1. Hold in trust for us the proceeds of the recovery; and

   2. Reimburse us to the extent of our payment.

### POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

   1. During the policy period as shown in The Declarations; and

   2. Within the policy territory.

B. The policy territory is:
   1. The United States of America, its territories or possessions;
   2. Puerto Rico; or
   3. Canada.

   This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

### TERMINATION

#### A. Cancellation

This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

   a. Returning this policy to us; or

   b. Giving us advance written notice of the date cancellation is to take effect.

2. We may cancel by mailing to the named



insured shown in the Declarations at the address shown in this policy:

a. At least 10 days notice:

   (1) If cancellation is for nonpayment of premium; or

   (2) If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

b. At least 20 days notice in all other cases.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

a. For nonpayment of premium; or

b. If your driver's license or that of:

   (1) Any driver who lives with you; or

   (2) Any driver who customarily uses "your covered auto";

   has been suspended or revoked. This must have occurred:

   (1) During the policy period; or

   (2) Since the last anniversary of the original effective date if the policy period is other than 1 year; or

c. If the policy was obtained through material misrepresentation.

**B. Nonrenewal**

If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 20 days before the end of the policy period. Subject to this notice requirement, if the policy period is:

1. Less than 6 months, we will have the right not to renew or continue this policy every 6 months, beginning 6 months after its original effective date.

2. 6 months or longer, but less than one year, we will have the right not to renew or continue this policy at the end of the policy period.

3. 1 year or longer, we will have the right not to renew or continue this policy at each anniversary of its original effective date.

**C. Automatic Termination**

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay

the required renewal or continuation premium when due shall mean that you have not accepted our offer. If you obtain other insurance on "your covered auto", any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions**

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals. However, making or offering to make the refund is not a condition of cancellation.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use "your covered auto".

B. Coverage will only be provided until the end of the policy period.

**TWO OR MORE AUTO POLICIES**

If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.



**\*MUTUAL POLICY CONDITIONS**

You are a member of the Liberty Mutual Fire Insurance Company while this policy is in force. Membership entitles you to vote in person or by proxy at meetings of the company. The Annual Meeting is in Boston, Massachusetts, on the second Wednesday in April each year at 11 o'clock in the morning.

Also, as a member, you will receive any dividends declared on this policy by the Directors.

This policy is classified in Dividend Class IV-Automobile.

This policy has been signed by our President and Secretary at Boston, Massachusetts, and countersigned on the Declarations Page by an authorized representative.

\*These conditions apply only if Liberty Mutual Fire Insurance Company is shown in the Declarations as the Insurer.

**SECRETARY**

**PRESIDENT**

Includes copyrighted material of Insurance Services Office, with its permission.
Copyright, Insurance Services Office, Inc., 1997



**AMENDMENT OF POLICY PROVISIONS - OHIO**

PERSONAL AUTO
AS 3716 09 13

## I. PART A - LIABILITY COVERAGE

Exclusion A.1. is replaced by the following:

1. for "bodily injury" or "property damage" which results directly or indirectly from:

   a. An intentional or criminal act or omission of any "insured" or an act or omission done at the direction of any "insured," even if the resulting "bodily injury" or "property damage";

      i. is of a different kind, quality, or degree than initially expected or intended;

      ii. is sustained by a different person, entity, real or personal property, than initially expected or intended; or

      iii. any "insured" who lacks the mental capacity to govern his or her conduct.

   However, this exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

Exclusion C. is added as follows:

C. We do not provide Liability Coverage for punitive or exemplary damages including fines, penalties, or attorney's fees awarded, as a result of punitive or exemplary damages.

## II. PART F - GENERAL PROVISIONS

Part F is amended as follows:

A. The following is added to the Legal Action Against Us provision:

   **LEGAL ACTION AGAINST US**

   A. Any suit against us is limited to a two year limitation from date of loss. Insured is responsible to present suit and damage details to a Liberty Mutual representative within that time period to maintain rights to bring any legal action.

B. The following is added to the Our Right To Recover Payment provision:

   **OUR RIGHT TO RECOVER PAYMENT**

   Our rights do not apply under paragraph A. with respect to Uninsured Motorists Coverage if we:

   1. Have been given prompt written notice of a tentative settlement between an "insured" and the

insurer of a vehicle described in Section 2. of the definition of "uninsured motor vehicle"; and

2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage.

2. We also have a right to recover the advanced payment.

C. The Termination provision is replaced by the following:

   **TERMINATION**

   **Cancellation.** This policy may be cancelled during the policy period as follows:

   1. The named insured shown in the Declarations may cancel by:

      a. Returning this policy to us; or

      b. Giving us advance written notice of the date cancellation is to take effect.

   2. We may cancel by mailing to the named insured shown in the Declarations at the address last known by us:

      a. At least 10 days notice:

         (1) If cancellation is for nonpayment of premium; or

         (2) If notice is mailed during the first 90 days this policy is in effect and this is not a renewal or continuation policy; or

      b. At least 30 days notice in all other cases.

   3. After this policy is in effect for 90 days, or if this is a renewal or continuation policy, we will cancel only:

      a. For nonpayment of premium; or

      b. If your driver's license has been





suspended or revoked. This must have occurred:

(1) During the policy period; or

(2) Since the last anniversary of the original effective date if the policy period is other than one year.

However, in the event that the driver's license of:

(1) Any driver who lives with you; or

(2) Any driver who customarily uses "your covered auto";

has been suspended or revoked, we may issue an endorsement providing that coverage will not be afforded to that named person; or

c. If the policy was obtained through material misrepresentation.

**Nonrenewal.** If we decide not to renew or continue this policy, we will mail notice to the named insured shown in the Declarations at the address last known by us. Notice will be mailed at least 30 days before the end of the policy period. if the policy period is other than one year, or written without a fixed expiration date, we will have the right not to renew or continue it only at each anniversary of its original effective date.

**Automatic Termination.** If you obtain other insurance on "your covered auto," any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.

**Other Termination Provisions.**

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of ISO with its permission.

AS 3716 09 13





## AUTOMOBILE AMENDATORY ENDORSEMENT

AS 3763 03 14

### I. AGREEMENT

The following language is added to the end of the Agreement section:

The application for this policy is incorporated herein and made a part of this policy. When we refer to the policy, we mean this document, the application, the Declarations page, and any applicable endorsements. The Insured agrees that all of the statements in the application for this policy are his or her statements, and constitute warranties. The Insured agrees that this policy is issued in reliance upon the truth of the Insured's warranties in the application. If it is determined that any warranty made in the application is incorrect, this policy shall be void ab initio (void back to the date of inception) upon return of the policy premium.

### II. DEFINITIONS

The **Definitions** section is revised as follows:

A. The definition of **Newly Acquired Auto** is replaced by the following:

"Newly acquired auto":

1. **Newly acquired auto** means any of the following types of vehicles you become the owner of during the policy period:
   a. A private passenger auto; or
   b. A pickup or van, for which no other insurance policy provides coverage, that:
      (1) Has a Gross Vehicle Weight of less than 10,000 lbs.; and
      (2) Is not used for the delivery or transportation of goods and materials unless such use is:
         (a) Incidental to your business of installing, maintaining or repairing furnishings or equip-ment; or
         (b) For farming or ranching.

   For this definition to apply to a **newly acquired auto**, which is in addition to the vehicles listed in the Declarations, we must insure all other vehicles owned by you.

2. Coverage for a **newly acquired auto** is provided as described below. If you ask us to insure a **newly acquired auto** after a specified time period described below has elapsed, any coverage we provide for a **newly acquired auto** will begin at the time you request the coverage.

   a. For any coverage provided in this policy except Coverage for Damage to Your Auto, a **newly acquired auto** will have the broadest coverage we now provide for any vehicle shown in the Declarations. Coverage begins on the date you become the owner.

   However, for this coverage to apply to a **newly acquired auto** that is in addition to any vehicle shown in the Declarations, you must ask us to insure it within 30 days after you become the owner.

   If a **newly acquired auto** replaces a vehicle shown in the Declarations, coverage is provided for this vehicle without your having to ask us to insure it.

   b. Collision Coverage for a **newly acquired auto** begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within:
      (1) 30 days after you become the owner if the Declarations indicate that Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage we now provide for any auto shown in the Declarations.
      (2) Five days after you become the owner if the Declarations do not indicate that Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the **newly acquired auto**, a Collision deductible of $500 will apply.

   c. Other Than Collision Coverage for a **newly acquired auto** begins on the date you become the owner. However, for this coverage to apply, you must ask us to insure it within.
      (1) 30 days after you become the owner if the Declarations





AS 3763 03 14

indicate that Other Than Collision Coverage applies to at least one auto. In this case, the **newly acquired auto** will have the broadest coverage we now provide for any auto shown in the Declarations.

(2) Five days after you become the owner if the Declarations do not indicate that Other Than Collision Coverage applies to at least one auto. If you comply with the 5 day requirement and a loss occurred before you asked us to insure the **newly acquired auto**, a Other Than Collision deductible of $500 will apply.

B. **"Necessary medical"** - when applied to services incurred by an insured under PART B - MEDICAL PAYMENTS COVERAGE - means services or supplies provided by a licensed hospital, licensed physician, or other licensed medical provider that, as determined by us or someone on our behalf, are:

1. Required to identify or treat an injury caused by an accident covered by this policy;
2. Consistent with symptoms, diagnosis, and treatment of the covered person's injury and appropriately documented in the covered person's medical records;
3. Provided in accordance with recognized standards of care for the covered person's injury at the time the charge is incurred;
4. Consistent with published practice guidelines and technology, and assessment standards of national organizations or multi-disciplinary medical groups;
5. Not primarily for the convenience of the covered person, or his or her physician, hospital, or other health care provider;
6. The most appropriate supply or level of service that can be safely provided to the covered person; and
7. Not excessive in terms of scope, duration, or intensity of care needed to provide safe, adequate, and appropriate diagnosis and treatment; However, necessary medical services or supplies do not include expenses for any of the following:

1. Nutritional supplements or over-the-counter drugs;
2. Experimental services or a supply, which means services or supplies that we determine have not been accepted by the majority of the relevant medical specialty as safe and effective for treatment of the condition for which its use is proposed.
3. In patient services or supplies provided to the covered person when these could safely have been provided to the covered person as an outpatient

C. **"Reasonable expenses"** - when applied to medical services incurred by an insured under PART B - MEDICAL PAYMENTS COVERAGE - means the least of:

1. The actual charge;
2. The charge negotiated with a provider; or
3. The charge determined by us based on a methodology using a database designed to reflect amounts charged by providers of medical services or supplies within the same or similar geographic region in which you receive your medical services or supplies. The database will reflect (a) service charge data regardless of the provider's specialty and (b) in the case of new procedures, services or supplies, or existing procedures, services or supplies for which there is little or no charge data, a comparison to commonly used procedures, services or supplies.

III. **PART A - LIABILITY COVERAGE**
The following replaces B. "Insured" as used in this Part means:

B. "Insured" as used in this Part means:

1. you;
2. your spouse;
3. the relatives of the first person named in the declarations;
4. any other person who is not insured for vehicle liability coverage by any other insurance policy, a self-insurance program, or a liability bond while using "your covered auto". The use of "your covered auto" must be within the scope of consent of you or your spouse; and
5. For any auto or "trailer", other than "your covered auto", any other person or organization but only with

Includes copyrighted material of ISO with its permission. AS 3763 03 14



**AS 3763 03 14**

respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision **(B.5.)** applies only if the person or organization does not own or hire the auto or "trailer".

## IV. PART B - MEDICAL PAYMENT COVERAGE

Exclusion **11.** under the Exclusions section of Part B is replaced by the following:

11. Sustained while **occupying** any vehicle while being used for:
   a. competing in; or
   b. practicing or preparing for any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

## V. PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

A. Paragraph A. of the **Insuring Agreement** of **Part D** is replaced by the following:
   **INSURING AGREEMENT**
   A. We will pay for direct and accidental loss to **your covered auto** or any **non-owned auto**, including their equipment, subject to **Customized Equipment Coverage**, minus any applicable deductible shown in the Declarations. If loss to more than one **your covered auto** or **non-owned auto** results from the same collision, only the highest applicable deductible will apply. We will pay for loss to your covered auto caused by:
      1. Other than **collision** only if the Declarations indicate that Other Than Collision Coverage is provided for that auto.
      2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.
      If there is a loss to a **non-owned auto** we will provide the broadest coverage applicable to any **your covered auto** shown in the Declarations.

B. The following **Customized Equipment Coverage** provision is added under **Part D:**
   **CUSTOMIZED EQUIPMENT COVERAGE**
   A. We will pay up to $500 for theft or damage to **customized equipment** if the loss is caused by:
      1. Other than **collision** only if the Declarations indicate that Other Than Collision

Coverage is provided for that auto.
      2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.
   Payments shall be reduced by the applicable deductible. However, only one deductible will be applied for any one loss. If you or the owner of a **non-owned auto** keeps salvaged material, payments will also be reduced by the salvage value. In no way shall this coverage increase the limit of liability for your covered **auto** or any non-owned auto.

B. "Customized equipment" means any parts, equipment and accessories including devices, extensions, furnishings, fixtures, finishings, and other alterations that:
   1. are permanently installed or attached by bolts or brackets;
   2. are removable from a housing unit that is permanently installed inside the auto;
   3. are permanently bonded to the vehicle by an adhesive or welding procedure; or
   4. change the appearance or performance of the vehicle;
   including but not limited to any additions or alterations to the chassis, engine, exterior or interior of the auto.
   This includes but is not limited to ground effects, specialty rims, performance tires, specialty paint or dye, roll bars, running boards, spoilers, special interior or exterior lighting, roof/trunk racks, and high performance engine components. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer are not considered **customized equipment.**
   This also includes any electronic equipment that is not necessary for the normal operation of the auto or the monitoring of the auto's operating system that is



**AS 3763 03 14**

used solely for the reproduction of recorded material or used for transmitting or receiving audio, visual or data signals. However, such parts, equipment and accessories that were installed by the automobile manufacturer or licensed auto dealer or in a location the automobile manufacturer intended for such equipment, are not considered **customized equipment**.

C. The limit for equipment designed solely for the reproduction of sound, including any accessories used with such equipment, which is not installed in the dash or console openings specified by the auto manufacturer of such equipment or accessories is $1,000.

D. If you have purchased additional coverage for **customized equipment** we will pay up to the amount of coverage you have purchased in addition to the $500 limit provided by the policy. This additional coverage must be shown in the Declarations.

E. The most we will pay for parts, equipment and accessories that are:
   a. not installed by the auto manufacturer or dealer and
   b. permanently installed in or upon the auto
   is the actual cash value of the vehicle not including such parts, equipment and accessories.

C. The Transportation Expenses provision of **Part D** is replaced by the following:

**TRANSPORTATION EXPENSES**

In addition, we will pay up to $30 per day to a maximum of 30 days for any temporary transportation expenses incurred by you.

This applies only in the event of the theft of **your covered auto**.

We will pay only transportation expenses incurred during the period:
1. Beginning 48 hours after the theft; and
2. Ending when **your covered auto** is returned to use or we pay for its loss.

D. Exclusion 4. is replaced by the following:

4. We will not pay for loss to equipment that is not permanently installed in or upon **your covered auto** or any **non-owned auto**. This consists of any equipment that is either designed for the reproduction of sound or receives or transmits audio, visual or data signals.

This includes but is not limited to:
   a. radios and stereos;
   b. tape decks;
   c. compact disc players and burners;
   d. digital video disc (DVD) players and burners;
   e. citizens band radios;
   f. scanning monitor receivers;
   g. television monitor receivers;
   h. global positioning system (GPS) receivers and/or components;
   i. video cassette players and recorders;
   j. audio cassette recorders; or
   k. personal computers, which includes laptops, desktops, and personal digital assistants (PDA) or any other handheld device.

All accessories used with the above or similar equipment are also excluded.

E. Exclusion 5. is replaced by the following:
   5. We will not pay for loss to **customized equipment** in excess of what is provided under Customized Equipment Coverage unless additional coverage has been purchased by endorsement and is shown in the Declarations.

F. Exclusion 13. is replaced by the following:
   13. Loss to **your covered auto** or any **non-owned auto** while the car is being used for:
      a. competing in; or
      b. practicing or preparing for any organized racing, speed, demolition, stunt or performance contest or related activity whether or not for pay.

G. Paragraph B of the **Limit of Liability** provision of **Part D** is added as follows:
   B. An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total loss. In this case, the actual cash value consists of the

Includes copyrighted material of ISO with its permission.   AS 3763 03 14



**AS 3763 03 14**

value of the vehicle not including any customized equipment.

## VI. PART E - DUTIES AFTER AN ACCIDENT OR LOSS

Part E is amended as follows:

A. Paragraph **B.** of **Part E** is replaced by the following:

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit. This includes, but is not limited to, allowing us to inspect damage to a vehicle covered by this policy.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require within 30 days of our request:

   a. To physical and mental exams by physicians we select under terms we require. We will pay for these exams.

   b. To interviews and recorded statements without the need for us to conduct an examination under oath.

   c. To examination under oath and subscribe the same.

4. Authorize us to obtain, within 30 days of our request:

   a. Medical reports; and

   b. Other pertinent records, including but not limited to, information contained in or transmitted by any device located in or on the motor vehicle.

5. Submit a proof of loss and proof of expenses when required by us within 30 days of our request.

## VII. PART F - GENERAL PROVISIONS

Part F is amended as follows:

A. The **Fraud** provision is replaced by the following:

**CONCEALMENT OR FRAUD**

This policy will not provide coverage under any part of this policy for any insured or any other person or entity seeking benefits under this policy (whether before or after a loss) if any insured:

a. conceals or misrepresents any material fact or circumstance,

b. makes false statements or

c. engages in fraudulent conduct,

any of which relate to a loss, an accident, or a claim.

B. The following **Loyalty Rewards** provision is added under **Part F**:

**LOYALTY REWARDS**

At our sole discretion, we, or a partner organization, may reward you by:

1. providing you, or another person insured under this policy, with things of value, including: airline miles, memberships, merchandise, points, rewards, services, or other items.

All other policy terms and conditions apply.





THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

UNINSURED/UNDERINSURED MOTORISTS COVERAGE - OHIO

PERSONAL AUTO
AS 3645 10 12

Part C - Uninsured Motorists Coverage is replaced by the following:

**INSURING AGREEMENT**

A. We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of:

1. An "uninsured motor vehicle" as defined in Sections 1., 2., and 4. of the definition of an "uninsured motor vehicle" because of "bodily injury":
   a. Sustained by an "insured"; and
   b. Caused by an accident.

2. An "uninsured motor vehicle" as defined in Section 3. of the definition of an "uninsured motor vehicle" because of "bodily injury" sustained by an "insured".

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "uninsured motor vehicle" or "underinsured motor vehicle".

With respect to Section 2. of the definition of "uninsured motor vehicle" or "underinsured motor vehicle" we will pay under this coverage only if 1. or 2. below applies:

1. The limits of liability under any bodily injury liability bonds or policies applicable to the "uninsured motor vehicle" or "underinsured motor vehicle" have been exhausted by payment of judgments or settlements; or

2. A tentative settlement has been made between an "insured" and the insurer of a vehicle described in Section 2. of the definition of "uninsured motor vehicle" and we:
   a. Have been given prompt written notice of such settlement; and
   b. Advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "Insured" as used in this Part means:
1. you;
2. your spouse;
3. the relatives of the first person named in the declarations;
4. any other person who is not insured for vehicle liability coverage by any other insurance policy, a self-insurance program, or a liability bond while using such a car. The use of such car must be within the scope of consent of you or your spouse; and
5. For any auto or "trailer", other than "your covered auto", any other person or organization but only with respect to legal responsibility for acts or omissions of you or any "family member" for whom coverage is afforded under this Part. This Provision (B.5.) applies only if the person or organization does not own or hire the auto or "trailer".

C. "Uninsured motor vehicle" means a self propelled land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident. In this case its limit for bodily liability must be less than the limit of liability for this coverage.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes "bodily injury" without hitting:
   a. You or any "family member";
   b. A vehicle which you or any "family member" are "occupying"; or
   c. "Your covered auto".
   The facts of the accident or intentional act must be proved. We will only accept independent corroborative evidence other than the testimony of an "insured" making a claim under this coverage, unless such testimony is supported by additional evidence.

4. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
   a. Denies coverage; or
   b. Is or becomes insolvent.

"Underinsured motor vehicle" means a self-propelled land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident, but its limit for bodily injury liability is either:
   a. Less than the limit of liability for this coverage; or

Electronically Filed 12/08/2017 11:20 / CV 17 890186 / Confirmation Nbr. 1245884 / CLDLJ



b. Reduced by payments to others injured in the accident to an amount which is less than the limit of liability for this coverage.

However, "uninsured motor vehicle" or "underinsured motor vehicle" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any "family member".
2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.
3. Owned by any governmental unit or agency, unless the owner or operator of the "uninsured motor vehicle" has:
   a. An immunity under the Ohio Political Subdivision Tort Liability Law; or
   b. A diplomatic immunity.
4. Operated on rails or crawler treads.
5. Designed mainly for use off public roads while not on public roads.
6. While located for use as a residence or premises.

EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage or Underinsured Motor Coverage for "bodily injury" sustained:
1. By an "insured" while "occupying", or when struck by, any motor vehicle owned by that "insured" which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.
2. By any "family member" while "occupying" or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

B. We do not provide Uninsured Motorists Coverage or Underinsured Motorist Coverage for "bodily injury" sustained by any "insured":
1. If that "insured" or the legal representative settles the "bodily injury" claim without our consent.

   However, this Exclusion (B.1.) does not apply if such settlement does not prejudice our right to recover payment.
2. While "occupying" "your covered auto" when it is being used as a public or livery conveyance. This Exclusion (B.2.) does not apply to a share-the-expense car pool.
3. Using a vehicle without a reasonable belief that that "insured" is entitled to do so. This Exclusion (B.3.) does not apply to a "family member" using "your covered auto" which is owned by you.

C. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:
1. Worker's Compensation law, or
2. Disability benefits law, except worker's compensation benefits.

D. We do not provide Uninsured Motorists Coverage or Underinsured Motorist Coverage for punitive or exemplary damages including fines, penalties, or attorney's fees awarded, as a result of punitive or exemplary damages.

LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage or Underinsured Motorist Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage or Underinsured Motorist Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

   This is the most we will pay regardless of the number of:
1. "Insureds";
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

B. The limit of liability shall be reduced by all sums paid because of "bodily injury" by or on behalf of persons or organizations who may be legally responsible. This includes all sums paid under Part A of this policy.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and
1. Part A, Part B or Part C of this policy; or
2. Both Uninsured Motorist Coverage and Underinsured Motorist Coverage provided by this policy.

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

OTHER INSURANCE

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided under this Part of the policy:



1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Any insurance we provide with respect to a vehicle you do not own shall be excess over any collectible insurance providing such coverage on a primary basis.

3. If the coverage under this policy is provided:

   a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

   b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

## ARBITRATION

A. If we and an "insured" do not agree:

1. Whether that "insured" is legally entitled to recover damages; or

2. As to the amount of damages which are recoverable by that "insured";

from the owner or operator of an "uninsured motor vehicle", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

1. Whether the "insured" is legally entitled to recover damages; and

2. The amount of damages.

## ADDITIONAL DUTY AFTER AN ACCIDENT OR LOSS

A person seeking Uninsured Motorists Coverage must also promptly notify us in writing of a tentative settlement between the "insured" and the insurer of a vehicle described in Section 2. of the definition of "uninsured motor vehicle", and allow us 30 days to advance payment to that "insured" in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "uninsured motor vehicle".

## GENERAL PROVISIONS

A. The following is added to the Our Right to Recover Payment Provision in Part F:

## OUR RIGHT TO RECOVER PAYMENT

Our rights do not apply under Paragraph A. with respect to Underinsured Motorist Coverage if we:

1. Have been given prompt written notice of a tentative settlement between an "insured" and the insurer of an "underinsured motor vehicle", and

2. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the "insured" is entitled to recover under the provisions of Underinsured Motorists Coverage; and

2. We also have a right to recover the advanced payment

Electronically Filed 12/08/2017 11:29 / CV 17 890 1887 Confirmation Nbr. 1245864 / CLDL5



B. The following is added to the Legal Action Against Us Provision in Part F:

LEGAL ACTION AGAINST US

C. Any suit against us for Uninsured Motorists Coverage and/or Underinsured Motorists Coverage is limited to a three year limitation from date of loss, or one year after the liability insurer for the owner or operator of the motor vehicle liable to the insured becomes the subject of insolvency proceedings, whichever is later.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

Includes copyrighted material of ISO with its permission.            AS 3645 10 12



## AMENDMENT OF POLICY DEFINITIONS

**THIS ENDORSEMENT CHANGES YOUR POLICY.  IT REPLACES ALL OTHER REFERENCES TO THE SAME SECTIONS OF THE POLICY.**

The following is added to item **A.** under the policy **DEFINITIONS:**

> 3. the partner in a civil union, registered domestic partnership or other similar union, with the "named insured" shown on the Declarations, if a resident of the same household.

> The above, only applies if the civil union or partnership was validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

> If the spouse or partner defined above is no longer a resident in the same household during the policy period or prior to the inception of the policy, the spouse or partner will be considered "you" and "your" under this policy until the earlier of:

> > **1.** The end of 90 days following the change of residency;

> > **2.** The effective date of another policy listing the spouse or partner defined above as a named insured; or

> > **3.** The end of the policy period.

Paragraph **A.** of the **TRANSFER OF YOUR INTEREST IN THIS POLICY** is deleted. It is replaced with the following:

**A.** Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations becomes deceased, coverage will be provided for:

> **1.** the surviving spouse or partner in a civil union, registered domestic partnership or other similar union, if a resident of the same household at the time of death.  Coverage applies to the spouse or partner as set forth herein, as if a named insured shown in the declarations; and

> **2.** the legal representative of the deceased person as if a named insured shown in the Declarations.  This applies only with regard to the representative's legal responsibility to maintain or use "your covered auto".

Section 1. only applies if the union or partnership is validly entered into under the laws of any state, municipality, or territory of the United States or any other country.

All other terms and conditions of this policy remain the same.

AS 2344 04 08                     Liberty Mutual Insurance Group



Electronically Filed 12/05/2017 11:29 / CV 17-090787 / Confirmation Nbr. 1245004 / CLDLS



**This Endorsement Changes Your Policy.  Please Read It Carefully.**

**Better Car Replacement™ Coverage**
_____

With respect to the coverage provided by this endorsement, the terms of the policy apply unless modified by the endorsement.

This coverage applies to "your covered auto" shown in the Declarations only if the Declarations indicate that Better Car Replacement™ Coverage and Part D Coverage for Damage to Your Auto "collision" and/or other than "collision" coverage applies to that auto.  If "your covered auto" is stolen, this coverage applies only if the Declarations indicate that Better Car Replacement™ Coverage and Part D Coverage for Damage to Your Auto other than "collision" coverage applies to that auto.

**A.  Definitions**
For the purpose of this coverage the following definitions are added:

    1.  "Your covered auto" does not mean a substitute automobile or a "non-owned auto".
       "Your covered auto" does not mean a leased vehicle.
       "Your covered auto" does not mean a "trailer" or a "miscellaneous type vehicle".
       "Your covered auto" does not mean an "antique" or a "unique and unusual" vehicle.

    2.  "Miscellaneous type vehicle" means a motor home, motorcycle or other similar type vehicle, all-terrain vehicle, dune buggy or golf cart.

    3  "Antique" means any motor vehicle or motorcycle registered as an antique.  If not registered the vehicle is maintained solely for the use in exhibitions, club activities or parades.

    4.  "Unique and unusual" means a motor vehicle which has an increased value due to collector or special interest status, and where Part D Coverage for Damage to Your Auto has been provided on a stated amount (maximum limit of liability) basis.

    5.  "Total loss" means a loss in which the cost to repair the vehicle to its pre-loss condition plus salvage value equals or exceeds the Actual Cash Value.

    6.  "Model year" refers to the model year shown on the title for "your covered auto".

**B.  Better Car Replacement™ Features**
Better Car Replacement™ Coverage applies if a covered "total loss" occurs to "your covered auto".  We will pay in cash, less any applicable deductible, the Actual Cash Value of the same make, model and equipment of a vehicle one "model year" newer than "your covered auto".
    1.  If the make and/or model of "your covered auto" has been discontinued we will use the most similar make, model, and equipment of a vehicle one "model year" newer than "your covered auto".
    2.  If the make and/or model of "your covered auto" has not been discontinued and a newer "model year" of "your covered auto" has not yet been manufactured or available, we will pay the limit of liability afforded under this endorsement.

**C.  Conditions**
    1.  Mileage used in calculating the Actual Cash Value will be determined by deducting 15,000 miles from the mileage on the damaged vehicle's odometer.  The maximum reduction is to zero miles.

    2.  "Our" liability is subject to a maximum of 120% of the Actual Cash Value of "your covered auto".





THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

## COVERAGE FOR DAMAGE TO YOUR AUTO EXCLUSION ENDORSEMENT

PERSONAL AUTO
PP 13 01 12 99

With respect to the coverage provided by this endorsement, the provisions of the policy apply unless modified by the endorsement.

**I. Definitions**

The following definition is added:

"Diminution in value" means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**II. Part D - Coverage For Damage To Your Auto**

The following exclusion is added:

We will not pay for:

Loss to "your covered auto" or any "non-owned auto" due to "diminution in value".

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 13 01 12 99              Copyright, Insurance Services Office, Inc., 1999              Page 1 of 1





## TOWING AND LABOR COVERAGE

AS 2208 02 05

We will pay for emergency roadside assistance charges incurred each time "your covered auto" or any "non-owned auto" is disabled.  This includes:

1. necessary towing charges when you call Liberty Mutual Roadside Assistance and allow us to make arrangements for the tow to the nearest repair facility from the place of disablement;

2. towing charges up to the amount shown on the policy Declarations Page when you either

    a) arrange for the tow; or

    b) request a tow to a repair facility other than the nearest repair facility from the place of disablement; or

3. when a tow is not required, labor charges incurred at the place of disablement, not to exceed the amount shown on the policy Declarations Page.

The nearest repair facility is determined by Liberty Mutual.

This coverage must be shown in the Declarations for the specific disabled vehicle which has this coverage.

If a "non-owned auto" is disabled, we will provide the coverage listed above only if you have purchased Towing and Labor Coverage for at least one "your covered auto" and it is shown in the Declarations.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.



**NUCLEAR, BIOLOGICAL, CHEMICAL & MOLD EXCLUSION ENDORSEMENT**           AS 2213 02 05

## THIS EXCLUSION APPLIES TO <u>ALL COVERAGES</u> PROVIDED BY THIS POLICY INCLUDING ANY AND ALL ENDORSEMENTS

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

We **do not** provide coverage for loss, damage, injury, liability, cost or expense due to or as a consequence of, whether controlled or uncontrolled or however caused:

    a. Nuclear exposure, reaction or explosion including resulting fire, smoke, radiation or contamination; and/or

    b. Biological or chemical attack or exposure to biological or chemical agents, or combination of such agents, including resulting contamination or pollution.

We **do not** provide coverage for loss, damage, injury, liability, cost or expense arising out of or aggravated by, in whole or in part, "mold, fungus, wet rot, dry rot, bacteria or virus."

"Mold, fungus, wet rot, dry rot, bacteria or virus" means any type or form of fungus, rot, virus or bacteria.  This includes mold, mildew and any mycotoxins, other microbes, spores, scents or byproducts produced or released by mold, mildew, fungus, rot, bacteria, or virus.

AS 2213 02 05                           ©2003 Liberty Mutual Insurance Company





THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

| LIABILITY COVERAGE EXCLUSION ENDORSEMENT | PERSONAL AUTO<br>PP 03 26 04 13 |
|---|---|

**LIABILITY COVERAGE**

The following exclusion is added to Part A, Section A:

We do not provide Liability Coverage for any "insured" for "bodily injury" to you or any "family member".

This exclusion does not apply in the case of death to you or any "family member".


This endorsement must be attached to the Change Endorsement when issued after the policy is written.



 Liberty Mutual.

## LOSS PAYABLE CLAUSE                                      PP 03 05 08 86

Loss Payee: _____

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations or in this endorsement.  This insurance with respect to the interest of the loss payee, shall not become invalid because of your fraudulent acts or omissions unless the loss results from your conversion, secretion or embezzlement of "your covered auto."  However, we reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest.  We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations.

When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

This endorsement must be attached to the Change Endorsement when issued after the policy is written.

PP 03 05 08 86                          Copyright, Insurance  Services Office, Inc., 1986

Electronically Filed 12/08/2017 11:20 / CV / CV 17 890186 / Confirmation Nbr. 1245884 / CLDLJ

**MARK S. FRANK**
**ATTORNEY AT LAW**
4469 Renaissance Parkway
Cleveland, Ohio 44128
**PHONE (216) 682-0870**
**FAX (216) 763-2620**
*e-mail: markfrank@lawyers.com*

*FACSIMILE TRANSMISSION*

TO: Andrew Quiroga-Liberty Mutual Insurance Claims

FAX #: 603-334-0398          DATE: May 25, 2017          # of pages 1

Re:     My Client: Nicole Wade
        Your Insured: Nicole and Ian Wade
        Date of Incident: August 11, 2015
        Claim No.: 035 586 422

Please be advised the undersigned has been retained by the above-referenced client for the purpose of representing her relative to the personal injuries she sustained in the above referenced incident.

At this time I am seeking determination whether my client would be covered through her policy with your company for medical payments or under-insured motorist benefits due to the minimal coverage by the at fault party in the incident. The at fault carrier has recently tendered their limits to my client.

Please provide me with a certified copy of any policy inforce covering my client with your company on the date of the incident.

Please contact me to discuss this matter further at your earliest convenience. I look forward to working with you.

Very truly yours,

Mark S. Frank

If you do not receive all of the pages listed above, please call 216-682-0870.
**NOTICE:** THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS ATTORNEY COMMUNICATION AND PRIVILEGED. IT IS INTENDED FOR THE USE OF THE ADDRESSEE. IF YOU RECEIVE THIS COMMUNICATION AND ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT THE COPYING OR DISTRIBUTION OF THIS COMMUNICATION IS PROHIBITED. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY PHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ABOVE ADDRESS.

**EXHIBIT**
B

# Send Result Report



MFP
## TASKalfa 6501i

Firmware Version  2N7_2000.005.105 2016.06.27

05/25/2017 13:32
[2N7_1000.006.001] [2N4_1100.001.002] [2N4_7000.005.103]

---

Job No.: 067235          Total Time: 0°00'44"          Page: 001

# Complete

Document:          doc0672352017052132757

---

**MARK S. FRANK**
**ATTORNEY AT LAW**
4469 Renaissance Parkway
Cleveland, Ohio 44128
**PHONE (216) 682-0870**
**FAX (216) 763-2620**
*e-mail: markfrank@lawyers.com*

_FACSIMILE TRANSMISSION_

TO: Andrew Quiroga-Liberty Mutual Insurance Claims

FAX #: 603-334-0398          DATE: May 25, 2017          # of pages  1

Re:     **My Client: Nicole Wade**
        **Your Insured: Nicole and Ian Wade**
        **Date of Incident: August 11, 2015**
        **Claim No.: 035 586 422**

Please be advised the undersigned has been retained by the above-referenced client for the
purpose of representing her relative to the personal injuries she sustained in the above referenced

---

| No. | Date and Time Destination | Times | Type | Result | Resolution/ECM |
|-----|---------------------------|-------|------|--------|----------------|
| 001 | 05/25/17 13:28 16033340398 | 0°00'44" | FAX | OK | 200x100 Normal/On |

# MARK S. FRANK

### *ATTORNEY AT LAW, LLC*
4469 Renaissance Parkway
Cleveland, Ohio 44128
**PHONE (216) 682-0870 or (216) 621-5661**
# FAX (216) 763-2620
## *e-mail: mark@marksfranklaw.com*

## FACSIMILE TRANSMISSION

TO:    Olivia Fonseca/Liberty Mutual Claims

# RE: Claim No.: LA000-035586422-02

FAX #: 866-567-1252        DATE: June 15, 2017                    # of pages 3

   Re:    **My Client/ Your Insured: Nicole Wade**
          **Date of Incident: August 12, 2015**

I understand you are the adjuster now assigned to this claim for personal injuries and underinsured motorists coverage relating to the above referenced incident.

Attached please find a letter from Erie Insurance, the tortfeasor's carrier in the above incident, tendering their policy limits for Ms. Wade's claim.

Based on the attached information, I am now requesting consent to settle with the tortfeasor, considering Liberty Mutual's rights of subrogation against Jessica Schiller. If you choose to withhold consent to settle and preserve your rights of subrogation, I demand that Liberty Mutual provide the $25,000.00 to Nicole Wade, in care of the undersigned and that you notify Erie of your subrogation interests.

I am further requesting that you address the claim of my client for the underinsured motorist coverage on her Liberty Mutual policy. I am advised that her policy has a UIM limit of $100,000.00 and $5,000.00 of medical payment coverage available. I have received a copy of the policy and I have determined that coverage is applicable for this claim.

(continued)


**EXHIBIT**

Please contact me to discuss the matter further and to confirm your position on coverage. I will then arrange to submit the medical specials for your review. Thank you for your attention and courtesy in this regard. I look forward to working with you on this claim.

Very truly yours,

Mark S. Frank

If you do not receive all of the pages listed above, please call 216-682-0870.
NOTICE: THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS ATTORNEY COMMUNICATION AND PRIVILEGED. IT IS INTENDED FOR THE USE OF THE ADDRESSEE. IF YOU RECEIVE THIS COMMUNICATION AND ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT THE COPYING OR DISTRIBUTION OF THIS COMMUNICATION IS PROHIBITED. IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY PHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ABOVE ADDRESS.

# Send Result Report

MFP

## TASKalfa 6501i

Firmware Version 2N7_2000.005.105 2016.06.27



06/15/2017 15:34
[2N7_1000.006.001] [2N4_1100.001.002] [2N4_7000.005.103]

Job No.: 070312          Total Time: 0°00'35"          Page: 003

# Complete

Document:          doc0703122017061515353314

---

### MARK S. FRANK

*ATTORNEY AT LAW, LLC*

4469 Renaissance Parkway

Cleveland, Ohio  44128

**PHONE (216) 682-0870 or (216) 621-5661**

# FAX (216) 763-2620

*e-mail: mark@marksfranklaw.com*

### FACSIMILE TRANSMISSION

TO:     Olivia Fonseca/Liberty Mutual Claims

## RE:  Claim No.: LA000-035586422-02

---

| No. | Date and Time | Destination | Times | Type | Result | Resolution/ECM |
|-----|---------------|-------------|-------|------|--------|----------------|
| 001 | 06/15/17 15:33 | 18665671252 | 0°00'35" | FAX | OK | 200x100 Normal/On |

---




CONTACT US

August 01, 2017

**By Phone**
Direct:    (630) 393-4776
Toll Free: (800) 225-2467
Ext.      78444
Fax:      (866) 567-1252

**By E-mail**
stephen.schleicher@
libertymutual.com

Mark S. Frank Attorney At Law, LLC
4469 Renaissance Pkwy
Cleveland OH 44128-5754

LM Insurance Corporation
PO Box 515097
Los Angeles, CA 90051-5097

Visit us online
LibertyMutual.com

| | |
|---|---|
| Insured: | Nicole Wade |
| Claimant: | Nicole Wade |
| Claim Number: | LA000-035586422-03 |
| Date of Loss: | 08/11/2015 |
| Policy Number: | AO5-281-043148-40 |

Dear Attorney Mark S. Frank,

Pursuant to our conversation on August 1, 2017, Liberty Mutual agrees to provide our consent to your client, Nicole Wade, to settle her claim with Erie Insurance for their $25,000 policy limits.  We will waive our right of subrogation against the tortfeasor and will offset the $25,000 from our evaluation of Mrs. Wade's UIM claim.

Also, based on the policy language we discussed, we interpret the statute of limitations for Mrs. Wade's UIM claim to be 3 years from the date of loss. Feel free to contact me should you wish to discuss in more detail.

Sincerely,
Stephen Schleicher
Claims Department



**EXHIBIT**

D

Electronically Filed 12/08/2017 11:20:17 CV 17 890 887 Confirmation Nbr. 1246554 / CLEEG

12/7/2017                                    Workspace Webmail :: Print

**Print | Close Window**

Subject: **Nicole Wade/LA000-035586422-03**
From: **mark@marksfranklaw.com**
Date: **Tue, Aug 15, 2017 4:07 pm**
To: **"Stephen Schleicher" <STEPHEN.SCHLEICHER@LibertyMutual.com>**
Attach: **sigimg1**
**Varga Records-2014 to Present.pdf**
**Nicole Wade (092165483) Correspondence (8-15-17).pdf**

Dear Mr. Schleicher:

Attached you will find Ms. Wade's medical records from her family physician starting in 2014 to the present. As stated Mrs. Wade moved to the USA from Germany in 2010. She states she did not have any medical treatment from 2010 to 2014 until she started seeing Dr. Varga. As you can see there were no prior neck or shoulder complaints or history in these records.

Also attached is a letter from Brian Ross from the Office of the Solicitor of the US Department of labor indicating that the US Government does not supply under-insured motorist coverage for their postal employees. I believe that letter is what you required.

We should now be in a position to conclude this matter.

Please call me after your review of this material.

Thank you for your attention.

Mark S. Frank

**MARK S. FRANK**
**ATTORNEY AT LAW, LLC**
EMAIL: mark@marksfranklaw.com
www.marksfranklaw.com
4469 Renaissance Parkway
Cleveland, OH 44128
P 216-682-0870
F 216-763-2620

---

The information contained in this electronic mail transmission is intended by Mark S. Frank for the use of the named individual or entity to which it is directed. This electronic mail transmission may contain legal, confidential or privileged information or be otherwise confidential. It is not intended for transmission to or receipt by anyone other than the named addressee or a person authorized to deliver it to the named addressee. If you have received this electronic mail transmission in error, then any distribution, reading, copying, or use of this communication is strictly prohibited. Please notify us immediately of the error by reply email or by calling Mark S. Frank, Attorney at Law at 216-682-0870, so that our address record can be corrected. Thank you.



MARK S. FRANK
ATTORNEY AT LAW



**EXHIBIT**
tabbies®
E-1

# MARK S. FRANK

### *ATTORNEY AT LAW, LLC*

4469 Renaissance Parkway
Cleveland, Ohio  44128
**PHONE (216) 682-0870 or (216) 621-5661**

## FAX (216) 763-2620

### *e-mail: mark@marksfranklaw.com*

## FACSIMILE TRANSMISSION

TO:    Stephen Schleicher/Liberty Mutual Claims

## RE:  Claim No.:  LA000-035586422-02

FAX #:  866-567-1252          DATE:  September 15, 2017               # of pages  1

      Re:    **My Client/ Your Insured:  Nicole Wade**
                **Date of Incident:  August 12, 2015**

I have made many attempts to contact you to discuss the status of this claim.  I have not had any response although I have left many messages and sent emails.  Please contact immediately to update me on this matter.  I have sent you all of the information you requested in order to finalize this claim.

Under the circumstances, should I not hear back by September 23, 2017 I will have no alternative but to file suit to advance the matter.  Thank you for your attention.

Very truly yours,

*Mark S. Frank*

If you do not receive all of the pages listed above, please call 216-682-0870.
NOTICE: THE INFORMATION CONTAINED IN THIS FACSIMILE TRANSMISSION IS ATTORNEY COMMUNICATION AND PRIVILEGED.  IT IS INTENDED FOR THE USE OF THE ADDRESSEE.  IF YOU RECEIVE THIS COMMUNICATION AND ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT THE COPYING OR DISTRIBUTION OF THIS COMMUNICATION IS PROHIBITED.  IF YOU RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY PHONE AND RETURN THE ORIGINAL FACSIMILE TO US AT THE ABOVE ADDRESS.

**EXHIBIT**

tabbies  E-2

# Send Result Report



MFP

TASKalfa 6501i

Firmware Version 2N7_2000.006.051 2016.12.05

09/15/2017 16:21
[2N7_1000.007.002] [2N4_1100.001.002] [2N4_7000.006.018]

Job No.: 085173          Total Time: 0°00'12"          Page: 001

# Complete

Document:          doc08517320170915162035

---

## MARK S. FRANK

### *ATTORNEY AT LAW, LLC*

4469 Renaissance Parkway

Cleveland, Ohio  44128

**PHONE (216) 682-0870 or (216) 621-5661**

## FAX (216) 763-2620

*e-mail: mark@marksfranklaw.com*

### FACSIMILE TRANSMISSION

TO:     Stephen Schleicher/Liberty Mutual Claims

RE:   Claim No.:  LA000-035586422-02

---

| No. | Date and Time | Destination | Times | Type | Result | Resolution/ECM |
|-----|---------------|-------------|-------|------|--------|----------------|
| 001 | 09/15/17 16:21 | 18665671252 | 0°00'12" | FAX | OK | 200x100 Normal/On |

**Print** | **Close Window**

**Subject:** RE: Nicole Wade; 035586422-03
**From:** mark@marksfranklaw.com
**Date:** Fri, Dec 01, 2017 9:37 am
**To:** "Schleicher, Stephen" <STEPHEN.SCHLEICHER@LibertyMutual.com>
**Attach:** image002.jpg
image003.png
sigimg1

Steve:

Thanks for the update on your wife's accident. Hope there are no after-effects injury-wise.

I feel this matter should be at the stage of finalizing a settlement. I have repeatedly reviewed the policy and see no exclusionary language that in good faith you could rely upon to deny coverage. As for the amount of the settlement, based upon the severity of the injuries, residuals and amount of expense incurred I feel that your limits are the proper offer. I can understand that you have an issue to discuss based on the Robinson figures, however, the courts are stating that the jury is to hear both the amount of charged for the medical services and the amount paid and then decide themselves on the reasonable value. I had also sent you the Federal CA-1108 based on the $100,000.00 of available coverage for this claim and extrapolated the Robinson number therein to $26,515.39. Also, there is the loss of services/consortium claim to consider.

My client and her husband, your insureds, have been patientiently waiting for your review of this claim since August when I supplied you with the information you requested. I have prepared a complaint covering all of these issues and stand ready to file should we be unable to reach a prompt resolution of this claim.

I am understanding of your current situation, and would appreciate your prompt response in any format.

Mark

**MARK S. FRANK**
**ATTORNEY AT LAW, LLC**
EMAIL: mark@marksfranklaw.com
www.marksfranklaw.com
4469 Renaissance Parkway
Cleveland, OH 44128
P 216-682-0870
F 216-763-2620



EXHIBIT
E-3

_____
The information contained in this electronic mail transmission is intended by Mark S. Frank for the use of the named individual or entity to which it is directed. This electronic mail transmission may contain legal, confidential or privileged information or be otherwise confidential. It is not intended for transmission to or receipt by anyone other than the named addressee or a person authorized to deliver it to the named addressee.

If you have received this electronic mail transmission in error, then any distribution, reading, copying, or use of this communication is strictly prohibited. Please notify us immediately of the error by reply email or by calling Mark S. Frank, Attorney at Law at 216-682-0870, so that our address record can be corrected. Thank you.



-------- Original Message --------
Subject: RE: Nicole Wade; 035586422-03
From: "Schleicher, Stephen" <STEPHEN.SCHLEICHER@LibertyMutual.com>
Date: Fri, December 01, 2017 4:42 am
To: "mark@marksfranklaw.com" <mark@marksfranklaw.com>

Thanks, Mark — I really appreciate that. She is doing fine — more of a headache with figuring everything out with the car than anything else.

I may not be not be available by phone until later this afternoon. I typically prefer to discuss these matters over the phone, but would you be ok with me sending you an email outlining our position in this case? If I'm back sooner, I will call your office. We can also discuss in detail next week, as I will be in and available all week.
Sorry for the odd-hour email, and I hope to speak with you soon on this matter.
Steve

> From: mark@marksfranklaw.com [mailto:mark@marksfranklaw.com]
> Sent: Thursday, November 30, 2017 1:34 PM
> To: Schleicher, Stephen <STEPHEN.SCHLEICHER@LibertyMutual.com>
> Subject: RE: Nicole Wade; 035586422-03
>
> I hope your wife is alright!
>
> Mark
>
> **MARK S. FRANK**
> **ATTORNEY AT LAW, LLC**
> EMAIL: mark@marksfranklaw.com
> www.marksfranklaw.com
> 4469 Renaissance Parkway
> Cleveland, OH 44128
> P 216-682-0870
> F 216-763-2620
>
>
> The information contained in this electronic mail transmission is intended by Mark S. Frank for the use of the named individual or entity to which it is directed. This electronic mail transmission may contain legal, confidential or privileged information or be otherwise confidential. It is not intended for transmission to or receipt by anyone other than the named

addressee or a person authorized to deliver it to the named addressee. If you have received this electronic mail transmission in error, then any distribution, reading, copying, or use of this communication is strictly prohibited. Please notify us immediately of the error by reply email or by calling Mark S. Frank, Attorney at Law at 216-682-0870, so that our address record can be corrected. Thank you.



-------- Original Message --------
Subject: RE: Nicole Wade; 035586422-03
From: <mark@marksfranklaw.com>
Date: Thu, November 30, 2017 2:30 pm
To: "Schleicher, Stephen" <STEPHEN.SCHLEICHER@LibertyMutual.com>

I am out on an appointment leaving at 12:30 a.m. tomorrow.

Can we speak before that, maybe 11:00 a.m.?

Mark

**MARK S. FRANK**
**ATTORNEY AT LAW, LLC**
EMAIL:  mark@marksfranklaw.com
www.marksfranklaw.com
4469 Renaissance Parkway
Cleveland, OH 44128
P 216-682-0870
F 216-763-2620

The information contained in this electronic mail transmission is intended by Mark S. Frank for the use of the named individual or entity to which it is directed. This electronic mail transmission may contain legal, confidential or privileged information or be otherwise confidential. It is not intended for transmission to or receipt by anyone other than the named addressee or a person authorized to deliver it to the named addressee. If you have received this electronic mail transmission in error, then any distribution, reading, copying, or use of this communication is strictly prohibited. Please notify us immediately of the error by reply email or by calling Mark S. Frank, Attorney at Law at 216-682-0870, so that our address record can be corrected. Thank you.

Workspace Webmail :: Print



-------- Original Message --------
Subject: RE: Nicole Wade; 035586422-03
From: "Schleicher, Stephen"
<STEPHEN.SCHLEICHER@LibertyMutual.com>
Date: Thu, November 30, 2017 2:16 pm
To: "mark@marksfranklaw.com" <mark@marksfranklaw.com>

Hi Mark,
I just found out that my wife was involved in a car accident.  I am going to be out
of the office the rest of the afternoon.  I'm sorry to cancel on our scheduled
discussion.  Would you be available tomorrow to discuss Ms. Wade's case?
Sorry again for the short notice, but I hope to speak with you soon.
Steve

**From:** mark@marksfranklaw.com
[mailto:mark@marksfranklaw.com]
**Sent:** Monday, November 27, 2017 1:26 PM
**To:** Schleicher, Stephen
<STEPHEN.SCHLEICHER@LibertyMutual.com>
**Subject:** Re: Nicole Wade; 035586422-03

How about Thursday afternoon.  2:30

Get Outlook for Android

On Mon, Nov 27, 2017 at 11:12 AM -0700,
"Schleicher, Stephen"
<STEPHEN.SCHLEICHER@LibertyMutual.com> wrote:

Hi Mark,
I understand you'd spoken with a colleague of mine while I
had been out of the office.  I'm just back today from being
out a couple weeks and wanted to reach out to you on this
case.  I know you'd been awaiting my response.  Would
you be available sometime this week to discuss this
matter?  I'm getting caught up on things having just
returned, but I know you and Mrs. Wade had been awaiting
my response so I am pushing this matter to the top of my
list.  I will plan on calling you this week, but I just wanted to

12/7/2017                                    Workspace Webmail :: Print

check if there was a day/time that worked best for you.  If
so, please let me know.

Thanks for your time, and I hope you and your family had a
nice Thanksgiving.
Steve

**Stephen Schleicher, CPCU, AIC**
Sr Claim Resolution Specialist II
U.S. Consumer Markets
Liberty Mutual Bodily Injury
P.O. Box 515097
Los Angeles, CA 90051-5097

Office: 630-393-4776
Fax: 866-567-1252
(Please include claim number on cover page)



Notice: The information contained in this electronic mail transmission is
intended by Liberty Mutual for the use of the named individual or entity to
which it is directed and may contain information that is privileged or otherwise
confidential. If you have received this electronic mail transmission in error,
please delete it from your system without copying or forwarding it, and notify
the sender of the error by reply e-mail or by telephone (collect), so that the
sender's address records can be corrected.

Copyright © 2003-2017. All rights reserved.



December 14,2017

Dear Customer:

The following is the proof-of-delivery for tracking number **788829786312**.

## Delivery Information:

| | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered to:** | Receptionist/Front Desk |
| **Signed for by:** | C.POWERS | **Delivery location:** | 30775 BAINBRIDGE RD 180 |
| | | | SOLON, OH 44139 |
| **Service type:** | FedEx Express Saver | **Delivery date:** | Dec 11, 2017 14:19 |
| **Special Handling:** | Deliver Weekday | | |
| | Direct Signature Required | | |



## Shipping Information:

| | | | |
|---|---|---|---|
| **Tracking number:** | 788829786312 | **Ship date:** | Dec 8, 2017 |
| | | **Weight:** | 0.5 lbs/0.2 kg |

| | |
|---|---|
| **Recipient:** | **Shipper:** |
| LIBERTY MUTUAL INSURANCE GROUP, INC | CCoC |
| 30775 BAINBRIDGE ROAD | 1200 Ontario |
| SUITE 180 | Cleveland, OH 44113 US |
| SOLON, OH 44139 US | |
| **Reference** | CV17890186 |
| **Invoice number** | 33999924 |

Thank you for choosing FedEx.

| CASE NO. | | SUMMONS NO. |
|---|---|---|
| CV17890186 | D1 FX | 33999924 |

Rules of Civil
Procedure

NICOLE WADE, ET AL. **PLAINTIFF**
VS
LIBERTY MUTUAL INSURANCE GROUP, INC. **DEFENDANT**

# SUMMONS

LIBERTY MUTUAL INSURANCE GROUP, INC.
30775 BAINBRIDGE ROAD
SUITE 180
SOLON OH 44139

**You have been named defendant in a sums complaint** (copy attached hereto) filed in Cuyahoga County Court of Common Pleas, Cuyahoga County Justice Center, Cleveland, Ohio 44113, by the plaintiff named herein.

**You are hereby summoned and required to answer the complaint within 28 days after service of this summons upon you, exclusive of the day of service.**

**Said answer is required to be served on:**



**Said answer is required to be served on Plaintiff's Attorney (Address denoted by arrow at left.)**

**Plaintiff's Attorney**

MARK S FRANK
4469 RENAISSANCE PARKWAY

CLEVELAND, OH 44128-0000

**Your answer must also be filed with the court within 3 days after service of said answer on plaintiff's attorney.**

**If you fail to do so, judgment by default will be rendered against you for the relief demanded in the complaint.**

**Case has been assigned to Judge:**

JOHN D SUTULA
**Do not contact judge. Judge's name is given for attorney's reference only.**

**NAILAH K. BYRD**
Clerk of the Court of Common Pleas

| DATE SENT |
|---|
| Dec 8, 2017 |

By 
Deputy

COMPLAINT FILED  12/08/2017



CMSN130